**In the Matter of John BROOMFIELD, Jr. a/k/a J.H. Broomfield, Jr. a/k/a John Broomfield, Debtor.**

**Bankruptcy No. 81–01881A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 20, 1983.

**460**

Warren P. Davis, Davis, Sissel & Williams, Atlanta, Ga., for debtor.

George L. Howell, Parks, Jackson & Howell, Atlanta, for creditor.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This matter is currently before the Court upon the debtor's objection to a proof of claim filed by creditor Witherspoon Development Corporation ("Witherspoon"). By order of June 30, 1982, this Court requested and thereafter received briefs from both parties to assist it in determining whether Witherspoon's proof of claim was to be allowed. Having this date vacated its order of November 9, 1982, this Court now denies the debtor's objection to Witherspoon's proof of claim. Because the allowance may require a modification of the debtor's original plan to pay 10 percent to unsecured creditors, this Court directs the Clerk to provide notice of the allowance of this claim to all interested parties. The debtor shall have 30 days to amend his plan if he so desires. Any objections to an amended plan, if filed, or to the present plan in light of the allowance of Witherspoon's claim are to be filed not later than 60 days from the entry of this order.

## FINDINGS OF FACTS

(1) On January 27, 1977, debtor John Broomfield, Vice President of Triangle Associates Advertising, Inc., and Albert Anderson, President of Triangle Associates Advertising, Inc., executed a "Note" and "Guaranty" for $50,000.00 plus interest in favor of Witherspoon as an inducement for the latter to loan money to Triangle Associates Advertising, Inc. ("Triangle");

(2) The "Guaranty" form, by its express terms, evidenced that the debtor and Anderson would be jointly and severally and primarily liable to Witherspoon;

(3) By the "Guaranty", debtor and Anderson pledged certain assets of Triangle to Witherspoon as collateral;

(4) In addition, debtor as security for $25,000.00 gave to Witherspoon a Deed to Secure Debt on certain real property in which it was later found that the debtor had no interest to convey. By order entered March 15, 1982, this Court determined that Witherspoon was an unsecured creditor;

(5) On December 10, 1980, debtor was notified by certified letter from creditor's attorney that the Note held by Witherspoon and guaranteed by debtor was in default and that demand was made on debtor for $67,500.00, the total of principal and interest;

(6) Debtor's attorney responded April 13, 1981, by certified mail to Witherspoon that pursuant to Ga.Code Ann. § 103–205 the creditor should proceed to collect from Triangle;

(7) On May 4, 1981, debtor filed a Chapter 13 petition, listing Witherspoon as an unsecured creditor and the debt as disputed;

(8) On June 23, 1981, creditor Witherspoon filed a proof of claim in the amount of $72,782.36 ($50,000.00 principal, $20,193.36 interest, and $2,589.00 other charges);

(9) On September 14, 1981, debtor filed an objection to Witherspoon's proof of claim;

(10) On September 17, 1981, Witherspoon filed an objection to confirmation of the debtor's chapter 13 plan;

(11) On April 28, 1982, the debtor's plan was confirmed subject to this Court's determination as to (1) whether Witherspoon's claim would be allowed, and (2) if allowed, whether the plan, because of the increased unsecured debt, would continue to meet the statutory requirements of a chapter 13;

(12) At the October 19, 1981 hearing, debtor testified that certain items listed as collateral to secure the loan made by Witherspoon which debtor considered assets of Triangle and which debtor estimated to be worth $10,000.00, were in the possession of his co-surety, Albert Anderson;

(13) Debtor further testified that these items were supposed to have been sold for the purpose of reducing the loan, but that debtor did not know whether the money was ever received;

(14) On November 9, 1983, this Court entered an order and judgment disallowing Witherspoon's claim;

(15) On December 17, 1982, Witherspoon filed a motion for consideration or to alter or amend judgment;

(16) On September 20, 1983, this Court vacated its order of November 9, 1982.

## DISCUSSION

### (A)

Debtor contends that the proof of claim filed by Witherspoon should not be allowed because Witherspoon's transfer of $10,000.00 worth of property to his co-surety, Albert Anderson, President of Triangle, had the effect of increasing the debtor's risk. Ga.Code Ann. § 103–203. Debtor argues

that such an impairment of collateral injured his right of subrogation and should discharge his debt. The creditor Witherspoon responds in its brief that it agreed to a sale of some of the collateral as proposed by Anderson who had discussed Triangle's cessation of business. According to the creditor's brief, Anderson reported that he had solicited two bids on equipment which was part of the creditor's collateral. The bids were in the range of $2,800.00, and Anderson offered to pay $5,000.00. The creditor states that it received only $2,177.50 from Anderson and applied this amount to reduce the total indebtedness of Triangle.

It is noted by this Court that Witherspoon presented no affirmative evidence regarding the above argument. At the October 19, 1981 hearing, the evidence presented to this Court was that the debtor had seen some of Triangle's assets ("collateral" of the creditor) both at Anderson's office and at Anderson's home (pp. 53–54). The debtor, on cross examination, further testified that he did not know whether the items had been sold or not; to his knowledge, no money had been applied to reduce the indebtedness on the note.

Assuming without deciding that a transfer occurred as outlined by the debtor's cross examination testimony, the question remains whether under the terms of the agreement between the creditor and co-sureties, such a transfer would discharge the debtor. In determining what acts by a creditor would be sufficient to discharge a surety, courts have looked to Ga.Code Ann. § 109A–3–601 (Harrison, 1979).[1] In partic-

---

1. 109A–3–601 Discharge of parties

(1) The extent of the discharge of any party from liability on an instrument is governed by the sections on

(a) payment or satisfaction (109A–3–603); or

(b) tender of payment (109A–3–604); or

(c) cancellation or renunciation (109A–3–605); or

(d) impairment of right of recourse or of collateral (109A–3–606); or

(e) reacquisition of the instrument by a prior party (109A–3–208); or

(f) fraudulent and material alteration (109A–3–407); or

(g) certification of a check (109A–3–411); or

(h) acceptance varying a draft (109A–3–412); or

(i) unexcused delay in presentment or notice of dishonor or protest (109A–3–502).

(2) Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money.

(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument

(a) reacquires the instrument in his own right; or

ular, numerous decisions have interpreted the requirements for discharge under Ga. Code Ann. § 109A–3–606(1)(b).[2] *Reeves v. Hunnicutt,* 119 Ga.App. 806, 168 S.E.2d 663 (1969); *Greene v. Bank of Upson,* 231 Ga. 287, 201 S.E.2d 463 (1973); *McBurnett v. National City Bank of Rome,* 142 Ga.App. 505, 236 S.E.2d 179 (1977); *Griswold v. Whetsell,* 157 Ga.App. 800, 278 S.E.2d 753 (1981). The courts in these cases pay special attention to the contractual language agreed to by the parties when measuring the actions of the parties against the discharge provisions.

Thus, in *Reeves v. Hunnicutt, supra,* the court held against a defendant who had claimed that plaintiff's transfer of collateral without the defendant's knowledge or consent "completely divorced him from the collateral ... and destroyed his right of contribution from the transferees" and, therefore, should have discharged him from his surety obligations. The court quoted the language of the Note:

The surrender or release of any collateral held by the payee or holder hereof, shall not affect the liability of any endorser, guarantor, surety or other party to this note, or release or relieve them or either of them, from liability to pay the full amount of this note, and the holder or payee may proceed against any party to this note without first proceeding against the maker or other party. The payee or holder hereof shall be under no duty to enforce payment of the collateral securing this note. Should any payee or holder undertake to collect upon such collateral or any part thereof, it shall not be liable for any negligence or mistake in judgment in making such collection, and should have the full right and authority to adjust, compromise and receive less than the amount due on any of said collateral, and otherwise to enter into any

accord and satisfaction with respect to same as made to said payee or holder seem advisable, without liability of any nature to any party to this paper, except to duly credit the amount received, less expenses upon this note.

*Id.* 119 Ga.App. at 807, 168 S.E.2d 663.

In *Greene v. Bank of Upson, supra,* the Supreme Court of Georgia found that the Bank's failure to file a financing statement did not impair the collateral so as to discharge the parties' guaranty obligation. Again, the court quoted directly from the agreement:

... that the holder of said note may from time to time extend or renew said note for any period (whether or not longer than the original period of said note), may, from time to time and without notice, surrender, compromise, substitute or exchange all or any part of the collateral described on the reverse hereof, and may grant any releases, compromises or indulgences with respect for said note or any extension or renewal thereof or any security therefore, or to any party liable thereunder or hereunder (including but not limiting to failure or refusal to exercise one or more of the rights or remedies provided by said note), all without notice to or consent of any of the undersigned and without affecting the liability of the undersigned hereunder, any of whom may be sued by the holder hereof with or without joining any of the other endorsers or makers of this note or without first or contemporaneously suing such other persons, or otherwise seeking or proceeding to collect from them.

*Id.* 231 Ga. at 287, 201 S.E.2d 463.

The Supreme Court of Georgia, then, quoting with approval from a non-Georgia case stated, " 'It is clear from the express wording of the endorsement that the Bank

(b) is discharged under any provision of this Article, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (109A–3–606).

**2.** 109A–3–606 Impairment of recourse or of collateral

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

could have released the collateral at any time without notice to the Etelsons [endorser and guarantor] and without the release affecting the Etelsons' obligation to pay. It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity'." *Id.* at 288, 201 S.E.2d 463.

In *Griswold v. Whetsell, supra,* the Court of Appeals recognized that a surety's right to a defense of "impairment of recourse or of collateral" is not cut off by a finding of primary liability. Significantly, however, the court held that "consent may be given in advance [to release or compromise the collateral] and is commonly incorporated in the instrument . . . it requires no consideration, and operates as a waiver of the consenting parties' right (the surety) to claim his own discharge." (Citations omitted). *Id.* 157 Ga.App. at 803, 278 S.E.2d 753. The court then examined the precise language of the *Griswold* note which stated in part: "The holder of said note . . . may from time to time and without notice surrender, compromise, substitute, or exchange all or any part of the collateral . . . and may grant any release, compromises, or indulgences with respect to . . . any security therefor . . . all without notice to or consent of any of the undersigned and without affecting the liability of the undersigned (surety) hereunder . . .". *Id.* at 803, 278 S.E.2d 753. In ruling against the defendant's contention that by negligently handling the perfection of the security interest, the plaintiff had discharged the surety, the *Griswold* court held that the language of the instrument clearly waived the surety's rights.

A comparison of the language of the guaranty in the instant case with the language of the agreements in the above cited cases demonstrates the strong similarities. The guaranty in the instant case in part reads:

> . . . the undersigned waives any notice of the incurring by the debtor at any time of any of the liabilities and waives any and all presentment, demand, protest or notice of dishonor, non-payment, or other default with respect to any of the Liabilities and any obligations of any party at any time comprised in the collateral. The undersigned hereby grants to Witherspoon Development Corp., full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the debtor or any other party and Witherspoon Development Corp., at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

> (a) To modify or otherwise change any terms of all or any part of any part of the Liabilities or the rate of interest thereon [but not to increase the principal amount of the note of the Debtor to Witherspoon Development Corp., to grant any extension or renewal thereof to any other indulgence with respect thereto and to effect any release, compromise or settlement with respect thereto;

> (b) To enter into any agreement of forebearance with respect to all or any part of the Liabilities or with respect to all or any part of the collateral, and to change the terms of any such agreement;

> (c) To forebear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

> (d) To consent to the substitution, exchange or release or all or any part of the collateral, whether or not the collateral, if any, received by Witherspoon Development Corp., upon any such substitution, exchange or release shall be of the same or of a different character or value than the collateral surrendered by Witherspoon Development Corp.;

> (e) In the event the non-payment when due, whether by acceleration or otherwise, of any of the Liabilities or in the event of default in the performance of any obligation comprised in the collateral to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Witherspoon Development Corp., may elect, at any public

or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the undersigned hereby waiving any such demand, advertisement and notice of the time or place or any adjournment thereof) (the undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forebear from realizing thereon, all Witherspoon Development Corp., in its uncontrolled discretion may be improper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against Witherspoon Development Corp., by reason of any action Witherspoon Development Corp. may take or omit to take under the foregoing powers.

The obligations of the undersigned hereunder and the rights of Witherspoon Development Corp. in the collateral, shall not be released, discharged or in any way affected, nor shall the undersigned have any rights against Witherspoon Development Corp., by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by Witherspoon Development Corp., or later; nor by reason of the fact that a valid lien and any of the collateral may not be conveyed to or created in favor of Witherspoon Development Corp., nor by reason of the fact that any of the collateral may be subject to equities or defenses or any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral.

Moreover, of particular significance in the instant case is the language concerning the debtor's rights of subrogation. The debtor's brief twice mentions the debtor's inability to subrogate himself because of the transfer of the collateral to the co-surety as reason for discharging his surety obligation. "An impairment of collateral may injure a surety's right of subrogation and result in his discharge to the extent of the property so impaired.... By entering into this surety agreement, Broomfield in no way consented to an action which essentially amounted to a gift of certain items of collateral from Witherspoon to Anderson, a co-surety. This impairment of collateral injured Broomfield's right of subrogation." While the record before this Court does not fully support the debtor's characterization of the circumstances, the guaranty does expressly refer to the surety's right of subrogation: "The undersigned shall have no right of subrogation whatsoever with respect to the Liabilities or the collateral unless and until Witherspoon Development Corp., shall have received full payment of all Liabilities." This express language prevents the surety from subrogation until the creditor "shall have received full payment of all Liabilities." In the presence of such express language, the surety will not be heard to complain that he should be discharged because his rights to subrogation have been impaired.

It is unnecessary for this Court to consider, and is not presently before this Court to consider, what rights or remedies may exist against the debtor's co-surety or against the creditor arising from the alleged transfer. On the issue of whether there has been an increase of risk or exposure to greater liability for the debtor, this Court holds that on the facts established by the parties the precise language of the guaranty, executed by the debtor John Broomfield as co-surety in favor of Witherspoon, waived the debtor's rights to object to discharge of his surety obligations.

### (B)

The Court by an order dated April 28, 1982, confirmed the debtor's Chapter 13

plan, previously submitted by the debtor on May 5, 1981. At that time, the debtor objected to the claim of Witherspoon, and the debtor's plan of May 5, 1981, did not provide for any payments to Witherspoon. Although the confirmation order was entered on April 28, 1981, this Court reserved its ruling on the merits of debtor's objections to the proof of claim filed by Witherspoon. By an order dated September 20, 1983, this Court has now allowed the claim of Witherspoon in the amount of $70,193.36 ($50,000.00 in principal and $20,193.36 in interest in accordance with the terms of the guaranty).

In recognition that the allowance of Witherspoon's claim may require a modification of the debtor's original plan to pay 10 percent to unsecured creditors, this Court directs the Clerk to provide notice of this opinion to the debtor, the trustee, and all creditors, and to allow the debtor 30 days in which to file an amended plan if the debtor desires to file an amended plan. Any objections to the amended plan are to be filed within 30 days of the debtor's filing. If the debtor files no amended plan, then any objections to the present plan in light of the allowance of Witherspoon's claim are to be filed within 60 days of the entry of this order.

It is so ORDERED.